PEARSON, J.

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

TINA KENDEL,                               )
                                           )        CASE NO. 5:10cv2300
                Plaintiff,                 )
                                           )
        v.                                 )        JUDGE BENITA Y. PEARSON
                                           )
LOCAL 17-A UNITED FOOD &                   )
COMMERCIAL WORKERS, *et al.*,              )        **MEMORANDUM OF OPINION AND**
                                           )        **ORDER** [Regarding ECF Nos. 171; 172;
                Defendants.                )        176; 181; 182; 184]

        This matter is before the Court upon the post-trial motions filed by both parties after

completion of a five-day jury trial and the Court's subsequent Judgment Entry (ECF No. 169) in

favor of Plaintiff on the retaliation claim and in favor of Defendant on the defamation claim in

accordance with the jury verdicts.  Plaintiff filed a Motion for a Judgment as a Matter of Law or,

in the alternative, New Trial pursuant to Fed. R. Civ. Pro. 50(b) (ECF No. 171); Defendant Local

("Defendant") filed a Motion for Judgment as a Matter of law, or, in the alternative, Motion for

Alteration or Amendment of the Judgment pursuant to Fed. R. Civ. Pro. 50 and 59 (ECF No.

172); Defendant filed a Motion for Disallowance (ECF No. 176) after Plaintiff filed a Bill of

Costs (ECF No. 175); Plaintiff filed a Motion to Strike Defendant's Reply Brief of August 17,

2012 (ECF No. 181); Defendant responded with a Motion Contra Plaintiff's Motion to Strike

Defendant's Reply Brief of August 17, 2012; and Defendant filed an Objection (ECF No. 184) to

Plaintiff's Fee Bill (ECF No. 183).

### I.  Background

        Plaintiff's Second Amended Complaint, alleged a claim for retaliation pursuant to Title

(5:10cv2300)

VII and Ohio Revised Code 4112, and a State law claim for defamation.[1]  ECF No. 54 at 4-6.

Following a five-day jury trial, the jury returned a verdict for Plaintiff on her claim for retaliation

and in favor of Defendant on the defamation claim.  ECF No. 163.  As to the issue of damages,

the jury awarded Plaintiff no compensatory damages and $30,000 in punitive damages on her

retaliation claim.  ECF No. 163 at 2.  The Court entered final judgment consistent with the jury

verdict.  ECF No. 169.

## II.  Legal Standard

A renewed judgment as a matter of law is governed by Fed. R. Civ. Pro. 50.  A Court may

grant a Rule 50 motion "only if in viewing the evidence in the light most favorable to the

non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds

could come to but one conclusion, in favor of the moving party." *Radvansky v. City of Olmsted*

*Falls*, 496 F.3d 609, 614 (6th Cir. 2007) (citing *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263

F.3d 595, 598 (6th Cir. 2001)).  Courts cannot "'reweigh the evidence or assess the credibility of

witnesses,' and our review is restricted to the evidence that was admitted at trial." *Sykes v.*

*Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (citing *Radvansky*, 496 F.3d at 614.  Also, a Court

cannot substitute its own judgment for that of the jury.  *Black v. Zaring Homes, Inc.*, 104 F.3d

822, 825 (6th Cir. 1997).  "When the evidence would permit reasonable minds to differ on the

issues decided by the jury, a motion for judgment as a matter of law must be denied.  In short,

every effort must be made to uphold the verdict if reasonably possible." *In re Scrap Metal*

---

[1] Plaintiff filed a Motion to Dismiss the 4112 Claim Only.  ECF No. 117.  The motion
was granted. ECF No. 129.

(5:10cv2300)

*Antitrust Litigation*, 2006 WL 2850453, at *8 (N.D.Ohio Sept 30, 2006).

The purpose of Fed. R. Civ. Pro. 59(e) is to provide the trial court the opportunity to cure its own mistakes. *Howard v. U.S.*, 533 F.3d 472, 475 (6th Cir. 2008).  The decision whether to alter or amend a judgment is within the discretion of the trial judge. *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 467 (6th Cir. 2009).  Importantly, a motion pursuant to Rule 59(e) is not an opportunity to re-argue a case, nor is it a proper vehicle to "raise arguments which could, and should, have been made before judgment issued." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir.1998) (citing *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992).  The Sixth Circuit acknowledges four grounds that justify altering or amending a judgment: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *American Civil Liberties Union of Kentucky v. McCreary*, 607 F.3d 439, 450 (6th Cir. 2010) (citing *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).

### III.  Discussion

### A.  Plaintiff's Rule 50 Motion for a New Trial and/or Judgment as a Matter of Law

### 1.  The Jury Did Not Err in Failing to Award Compensatory Damages

Plaintiff argues that she should have been awarded $1,700 in back pay as compensatory damages.  ECF No. 171 at 6.  The back pay represents her salary for 17 months as treasurer, an elected position Plaintiff had previously held and which Plaintiff had alleged she lost because of Defendant's improper actions.  ECF No. 54 at 4.  Plaintiff asserts that "there is a presumptive entitlement for Ms. Kendel in regards to the back pay owed to her caused by the loss of the union

3

(5:10cv2300)

representative position because of the retaliation of the union by filing the counterclaim against her based upon embezzlement." ECF No. 171 at 5.  Defendant argues the back pay represents lost income for her failed re-election, which was dependant upon her defamation claim, and that because the jury found against Plaintiff on the defamation claim, they properly withheld compensatory damages.  ECF No. 174 at 1.

"[B]ack pay is not an automatic or mandatory remedy." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415 (1975).  Rather, an award should be consistent with the legislative guidelines to make a plaintiff whole.  *Id*. at 418-19.  Back pay should "completely redress the economic injury the claimant has suffered as a result" of the defendant's wrongful acts; a claimant should receive that "which he would have received but for discrimination." *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 626 (6th Cir. 1983).  Thus, in order to award back pay, the wrongful conduct must have caused the depravation.  In the instant case, the jury did not find that the retaliatory counterclaim caused the election loss, which in turn caused the lost wages. Accordingly, the jury did not award back pay.  *See also Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 880 (6th Cir. 1991) (affirming denial of back pay in a Title VII  retaliation case and noting back pay must be based upon more than "mere speculation.").  This was not improper, nor does it appear that the jury was "confused," as Plaintiff alleges (ECF No. 171 at 4).

### 2. The Jury Was Properly Instructed on the Defamation Claim

Plaintiff asserts the Court incorrectly charged the jury under *Cox v. Galazin*, 460 F. Supp. 2d 380 (D.Conn. 2006) by requiring Plaintiff to show by clear and convincing evidence that Defendant acted with actual malice.  ECF No. 171 at 6.  Plaintiff alleges that *Cox* does not apply

4

(5:10cv2300)

to this matter because the instant action is not a "labor dispute."  ECF No. 171 at 6.  Plaintiff

further asserts that even with the *Cox* standard applied, she met this allegedly elevated burden.

ECF No. 171 at 6.  Defendant contends that the Court properly charged the jury for the reasons

explained on the record when Plaintiff originally objected.  ECF No. 174 at 6.

In *Cox*, the court held that the actual malice standard applied in a defamation action

against the union by a former union president because the statements were made in the context of

a labor dispute.  460 F.Supp.2d at 392.  A "labor dispute," as defined by the National Labor

Relations Act, "includes any controversy concerning terms, tenure or conditions of employment,

or concerning the association or representation of persons in negotiating, fixing, maintaining,

changing, or seeking to arrange terms or conditions of employment, regardless of whether the

disputants stand in the proximate relation of employer and employee."  29 U.S.C. § 152(9).  In

*Linn v. United Plant Guard Workers of America, Local 114*, the Supreme Court held that state

remedies for libel are not available in a labor union dispute except where "the defamatory

statements were circulated with malice and caused [the plaintiff] damage."  383 U.S. 53, 64-65

(1966).

The statements in *Cox* concerned comments made by a union president and a union

official as the result of information gleaned in an internal audit.  460 F.Supp.2d at 383.  The *Cox*

court, relying upon *Linn* and citing two circuit court decisions, stated that, "although the alleged

defamatory statements to union membership and among union officials do not arise from a

traditional 'labor dispute,' they are similar to the statements in *Henry* and *Sullivan* in that they

involve issues relevant to the union's support of the successor administration and union politics,

5

(5:10cv2300)

even though they did not occur in the context of a campaign."[2]  *Id*. at 393.

The instant Court, in making its "labor dispute" determination, relied upon *Grayhawk, LLC v. Indiana/Kentucky Regional Council of Carpenters, Local No. 64, et al.*, 2011 WL 239827 (W.D.Ky. Jan. 24, 2011).  The *Grayhawk* court found that statements made by a union about the plaintiff contractor to a general contractor was encompassed by the statutory definition "labor dispute."  *Id*. at *2.  First, the court noted that "a labor dispute exists in any situation 'where the union acts for some arguably job-related reason and not out of pure social or political concerns.'"  *Id*. (quoting *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union*, 39 F.3d 191, 195 (8th Cir. 1994) (citing *Hasbrouck v. Sheet Metal Workers Local 232*, 586 F.2d 691, 694 n. 3 (9th Cir. 1978)).  The court then rejected the plaintiff's argument that the statements were not "job-related" because they sought to harm plaintiff's business relations for the benefit of other contractors the union had agreements with.  *Grayhawk*, 2011 WL 239827 at *2.  The court stated that "the undeniable economic effect of these actions renders them 'job-related.'"  *Id*.

---

[2]  The *Cox* court, in noting that some courts have extended what constitutes a traditionally defined "labor dispute" in defamation cases, cited *Henry v. Nat'l Ass'n of Air Traffic Specialists, Inc.*, 1994 WL 406550, at *2 n.5 (4th Cir. Aug. 4, 1994) (dispute between competing factions within a union for control of that union is a "labor dispute" under *Linn* because both *Henry* and *Linn* "involved two sides 'vying for the good opinion (and votes) of [the] union membership' by means of 'vigorous' and 'vituperative' public relations campaigns designed 'to sway [the] union membership' into voting a certain way."); *Sullivan v. Conway and Int'l Brotherhood of Electrical Workers*, 157 F.3d 1092, 1099 (7th Cir. 1998) (union official stated that plaintiff, hired by the union as a business agent, is "a very poor lawyer"; comment was communications on matters of union business to union officers and member and thus within the internal management of unions, citing *Linn*); and *Nat'l Ass'n of Government Employees, Inc. v. Nat'l Federation of Federal Employees*, 844 F.2d 216, 220 (5th Cir. 1988) ("Because the policy of encouraging 'uninhibited, robust, and wide-open' debate on matters of public concern extends to labor-management disputes, [actual malice] standards apply in actions brought by a union for defamatory statements circulated during an election campaign.).

(5:10cv2300)

The instant Court found that the statements inherent in Plaintiff's defamation claim fell within the definition of "job-related."  The Court noted that statements made about causing the union to go broke had an economic effect that rendered the statements job-related and, therefore, Plaintiff was required to show by clear and convincing evidence that Defendant acted with actual malice.  Plaintiff, aside from stating that "[t]his case is not a labor dispute.  This is simply an employee/employer situation," offers no specific or meaningful arguments to the contrary.[3]  ECF No. 171 at 6.  Accordingly, the Court declines Plaintiff's invitation to disturb its prior finding.

Plaintiff further argues she met the "elevated burden of proof"and was able to show actual malice by clear and convincing evidence.  ECF No. 171 at 6.  Plaintiff briefly argues that she offered evidence that shows she "was entitled to the 5% increase per year" and Defendant acted with actual malice because they "never attempted to investigate their allegations of embezzlement or conversion before placing it on the record."  ECF No. 171 at 5-6.  Without more, Plaintiff does not convince the Court that a reasonable jury would not have had a legally sufficient evidentiary basis to find against her on that issue.

**B. Defendant's Rule 50 and 59 Motion for Judgment as a Matter of Law or Alter/Amend Judgment**

**1. The Punitive Damage Award Was Proper**

Defendant argues the jury's award of punitive damages was improper because there were

---

[3]  The Court notes that Plaintiff appears to indicate her disagreement with the "clear and convincing" portion of the labor dispute rather than the "actual malice" portion, though it is not clear from the record that Plaintiff made these arguments prior to her post-trial brief.  The Court further notes that neither party cited to identifiable filings or portions of the trial transcript in their post-motion briefs.

(5:10cv2300)

no compensatory or nominal damages awarded.  ECF No. 172 at 7.  Plaintiff in turn asserts that

Title VII allows punitive damage awards in the absence of compensatory damages.[4]  ECF No.

173 at 5.

Both parties rely upon *Tisdale v. Federal Express. Corp.*, 415 F.3d 516 (6th Cir. 2005).

In *Tisdale*, the court found that an award of punitive damages in the absence of actual or nominal

compensatory damages was proper in a Title VII case.  *Id.* at 535.  The *Tisdale* court further

noted and cited two courts of appeals decisions that upheld a punitive damage award in the

absence of compensatory damages and back pay.  *Id.* at 534-35 (citing *Cush-Crawford v. Adchem

Corp.*, 271 F.3d 352, 359 (2d Cir. 2001) (it is often "precisely [in the cases where no actual harm

is shown] that the policy of providing an incentive for plaintiffs to bring petty outrages into court

comes into play," citing PROSSER & KEETON ON TORTS § 2, at 14); *Timm v. Progressive Steel

Treating, Inc.*, 137 F.3d 1008, 1010 (7th Cir. 1998) (the absence of back pay is no matter when

determining that the jury properly awarded punitive damages despite an absence of compensatory

damages).

In the instant case, Plaintiff did not suffer actual damages resulting from Defendant's

retaliation— and yet, the jury reasonably found that Defendant did retaliate against Plaintiff,

resulting in the punitive damage award.  This is consistent with the principles of Title VII

damages expressed in *Tisdale*.  415 F.3d at 534 (common law rationale requiring compensatory

damages for a punitive damage award "does not hold in the Title VII context" as the statutory

---

[4]  Plaintiff also alleges that Defendant "never objected to the jury instructions regarding
punitive damages."  ECF No. 173 at 3.  Defendant did not respond to this allegation.

8

(5:10cv2300)

caps on punitive damages within the statute "ensure against limitless awards in cases of insubstantial harm."). *See also Cush-Crawford*, 271 F.3d at 539 ("There is some unseemliness for a defendant who engages in malicious or reckless violations of legal duty to escape either the punitive or deterrent goal of punitive damages merely because either good fortune or a plaintiff's unusual strength or resilience protected the plaintiff from suffering harm."). Accordingly, the punitive damage award was not contrary to law and will not be set aside.

## 2. The Punitive Damage Award Was Not Excessive

Defendant asserts that if the $30,000 punitive damage award is appropriate, it is grossly excessive and cites the guideposts set forth in *BMW of North Am. v. Gore*, 517 U.S. 559 (1996). ECF No. 172 at 7. Plaintiff asserts that a punitive damage award that exceeds the *Gore* ratio is not *per se* improper in Title VII cases wherein no compensatory damages are awarded. ECF No. 173 at 7. When reviewing a punitive damage award, a court must consider (1) the degree of reprehensibility of the defendants misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damage award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *See Gore*, 517 U.S. at 574-75.

### a. The Degree of Reprehensibility Was Met

Defendant argues that the first *Gore* guidepost, the degree of reprehensibility of its misconduct, did not necessitate the damage award. ECF No. 172 at 8. The degree of reprehensibility is "[t]he most important indicium of the reasonableness of a punitive damages award." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (quoting *Gore*,

9

(5:10cv2300)

517 U.S. at 575).  *State Farm* set forth a list of five criteria that lower courts must consider in

determining the reprehensibility of a defendant's conduct:

> the harm caused was physical as opposed to economic; the tortious conduct
> evinced an indifference to or a reckless disregard of the health or safety of others;
> the target of the conduct had financial vulnerability; the conduct involved repeated
> actions or was an isolated incident; and the harm was the result of intentional
> malice, trickery, or deceit, or mere accident.  The existence of any one of these
> factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive
> damages award; and the absence of all of them renders any award suspect.

538 U.S. at 419 (internal citation omitted).

The jury found that Plaintiff did not suffer economic or physical harm, the first factor.  As

to the rest, Defendant asserts that:

> there was no evidence that Defendant Local 17-A's conduct exhibited indifference
> to or reckless disregard for the safety of others.  As to the third criteria, there was
> no evidence that Plaintiff Kendel was a financially vu[l]nerable target.  As to the
> fourth criteria, there was no evidence that Defendant Local 17-A's wrongful
> conduct was repeated.  Finally, as to the fifth element of reprehensibility, there
> was no evidence that Defendant Local 17-A's misconduct was the result of any
> intentional malice, trickery or deceit.

ECF No. 172 at 8.  Plaintiff, for her part, asserts:

> Defendant retaliated against Plaintiff in such a manner that was indifferent to the
> long lasting effects on her reputation or the future of the Union.  Third, Plaintiff
> was clearly a financially vulnerable target.  She makes considerably less money
> than the Defendant.  Moreover, she was an at will employee of Defendant.
> Consequently, she depended on Defendant for her future income.  Fourth,
> Defendant engaged in separate actions that were covered under the claim of
> retaliation.  These included, filing a motion to amend answer to file a malicious
> counterclaim and spreading rumors about Plaintiff to Union members.  Finally,
> Defendant exhibited intentional malice to harm Plaintiff due to her filing a
> discrimination claim.  There was testimony that members of the Union were upset
> that Plaintiff had filed a previous discrimination claim and included Local 17A as
> a co-defendant.  It is reasonable to believe that the retaliation suffered by the
> Plaintiff stemmed from this motive.

10

(5:10cv2300)

ECF No. 173 at 6.  Neither party cites legal authority in support of its factual arguments.

As to the second factor, Defendant's conduct did not involve deliberate indifference or reckless disregard to the safety of others.  Third, because economic harm was not involved, the determination of financial vulnerability is irrelevant.  *See Clark v. Chrysler Corp.*, 436 F.3d 594, 604 (6th Cir. 2006) (financial vulnerability relevant when the harm inflicted is economic in nature).  Fourth, the Sixth Circuit has interpreted the repeated conduct factor to "require that the similar reprehensible conduct be committed against various different parties rather than repeated reprehensible acts within the single transaction with the plaintiff."  *Chicago Title Ins. Corp. V. Magnuson*, 487 F.3d 985, 1000 (6th Cir. 2007) (citing *Bach v. First Union Nat'l Bank*, 149 Fed.App'x. 354, 365 (6th Cir. 2005).  Thus, Plaintiff's assertion that Defendant engaged in separate actions against her is not relevant to the repeated conduct determination.

Finally, as to the fifth element of reprehensibility, there was evidence that Defendant Local 17-A's misconduct was the result of intentional malice, trickery or deceit.  There was testimony that members of the Union were upset that Plaintiff had filed a previous discrimination claim and included Local 17A as a co-defendant.  The retaliatory counterclaim was in response to a filing of a charge and complaint alleging a sexually hostile work environment.  Such retaliation, therefore, is reasonably seen as performed with intentional malice.

In sum, only the fifth factor is met.  However, intentional malice, trickery, or deceit "has become an important criterion of what the Constitution accepts as reprehensible conduct." *Clark*, 436 F.3d at 605 (citing *Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 345 F.3d 1366, 1371 (Fed.Cir. 2003) (punitive damage award upheld when the only enhancing reprehensibility

11

(5:10cv2300)

*Gore* criteria met was intentional malice, trickery or deceit)).  In the instant case, the jury

reasonably found that the retaliation was intentional and done with malice, and the evidence

supported such a finding.  Defendant's conduct therefore constituted reprehensible misconduct.

### b.  The Ratio Was Not Disproportional

In support of its position as to the second *Gore* guidepost, the disparity between actual

harm and the punitive damage award, Defendant relies upon *Clark*, *supra*, a products liability

case.  However, Title VII punitive damage awards are better viewed in the context of Title VII

cases wherein the common law requirement of compensatory damages do not apply, and

statutory caps on recovery do apply and are enumerated.  For example, in *Cush-Crawford*, the

Second Circuit upheld a $100,000 punitive damages award when the plaintiff recovered neither

compensatory or nominal damages, because of the $100,000 statutory bar on recovery set out in

42 U.S.C. 1981a(b)(3)(B).  271 F.3d at 357.  This is a 100,000:0 ratio.  Defendant asserts that

*Cush-Crawford* "never addressed the issue whether the punitive damage award was

'constitutionally grossly excessive' because the matter was never raised as an issue."  ECF No.

180 at 3.  While this statement is accurate, the Court finds that the analysis in *Cush-Crawford*

and other cases lead to a finding that the punitive award in the instant case is within the statutory

cap set by Congress, is reasonable, and satisfies the due process concerns in *Gore*.

"[B]ecause there are no rigid benchmarks that a punitive damages award may not surpass,

ratios greater than those we have previously upheld may comport with due process where 'a

particularly egregious act has resulted in only a small amount of economic damages.'"  *State*

*Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (quoting *Gore*, 517 U.S. at 582).

(5:10cv2300)

Moreover, "the statutory caps on punitive damages ensure against limitless awards in cases of insubstantial harm." *Tisdale*, 514 F.3d at 534 (internal citation omitted); *see also E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 617 (11th Cir. 2000) (Title VII's statutory sums "put [defendant] on notice that it could be liable for punitive damages up to the statutory cap."; *Arizona, Dept. of Law, Civil Rights Div. v. ASARCO, L.L.C.*, 798 F.Supp.2d 1023, 1039-40 (D.Ariz., 2011) ("As we see it, the combination of the statutory cap and high threshold of culpability for any award confines the amount of the award to a level tolerated by due process.").

The Court trusts the sound judgment of the jurors whom listened to the testimony and found that Defendant retaliated against Plaintiff and awarded punitive damages accordingly. Because the punitive damage award is well within the statutory cap of $50,000 for Plaintiff in the instant case,[5] and despite the fact that it was awarded in the absence of compensatory or nominal damages as well as back pay, the award is not disproportional.

Defendant makes no argument regarding *Gore's* third guidepost, the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Gore*, 517 U.S. at 583. As noted, the maximum civil punitive damage award pursuant to 42 U.S.C. 1981(b)(3)(A) is $50,000. The $30,000 punitive damage award falls well short of that amount, and is therefore supported by the third guidepost of *Gore*. *See Jeffries v. Wal-Mart Stores, Inc.*, 15 Fed. App'x. 252, 270 (6th Cir. 2001) (noting Congress' statutory cap when considering the third *Gore* factor).

---

[5] The $50,000 statutory cap applies "in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 1981a(b)(3)(A).

13

(5:10cv2300)

Accordingly, the Court finds that the punitive damage award is not grossly excessive.

**C.  Defendant's Motion for Disallowance**

Plaintiff filed a Bill of Costs for $4,984.61 pursuant to 28 U.S.C. § 1920.[6]  ECF Nos. 177;

178 at 2.  Defendant appears to object to Plaintiff's Bill primarily because of the amount charged

for printing copies, $1,597.30.  ECF No. 176 at 1.  Defendant asserts Plaintiff did not include a

statement that 1) the cost of the printing is no higher than what is generally charged for

reproduction in the local area and 2) that no more copies than what was actually necessary were

reproduced.  ECF No. 176 at 1.  Plaintiff argues that Defendant does not provide any authority

for the "local area" argument; that, in any event, the cost of the copies are reasonable and the

local document reproduction company has been used in previous litigation and, therefore, not

selected to increase costs; and that the amount of copies generated were exactly what was

required by the Court at trial.  ECF No. 178 at 2.

Absent a more pointed objection from Defendant, the Court accepts Plaintiff's argument

that the copying was done by a local firm used in previous litigation and not selected to increase

costs.  As to volume, "the costs of photocopying are recoverable to the extent such costs 'were

used as court exhibits or were furnished to the Court or the opposing counsel.'"  *Arthur S.*

*Langenderfer, Inc. v. S.E. Johnson Co.*, 684 F.Supp. 953, 961 (N.D.Ohio 1988) (citing *Beech*

---

[6]  Plaintiff's costs initially totaled $5,058.77 (ECF No. 175), but $42.11 in postage costs
and $31.75 in copying fees were deducted.  ECF Nos. 177; 178 at 3-4.  Plaintiff also asserted the
Bill of Cost is "more appropriate in the fee application to be filed with the court in the future."
ECF No. 178 at 4.  However, Plaintiff did not attempt to withdraw the Amended Bill of Costs
filed on the same day as Plaintiff's brief in response to Defendant's motion– the Court will thus
consider the Amended Bill of Costs (ECF No. 177) rather then what appears to be an identical
tally of costs filed with Plaintiff's fee application (ECF No. 183 at 28-37).

14

(5:10cv2300)

*Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F.Supp. 1195, 1198 (S.D.N.Y.1979),

aff'd, 622 F.2d 1106 (2d Cir.1980); *Hunt v. Big Lots Stores, Inc.*, 2007 WL 4118831, at *1

(N.D.Ohio Nov. 16, 2007).  Plaintiff is, thus, entitled to recover to the extent that the copies were

used as court exhibits or were furnished to the court or the opposing counsel.  The Court ordered

the parties submit two separate binders to the Court and one to opposing counsel.  ECF No. 178

at 3.  Thus, Plaintiff can recover for three sets of copies of proposed exhibits, but not a fourth, for

Plaintiff's own use.  The Bill of Costs will thus be reduced by 1/4 the cost of copying, resulting

in a total of $4,585.25.

### D.  Defendant's Objection to Plaintiff's Fee Bill[7]

#### 1.  The Fee Bill is Unreasonable in Part

##### a.  Reasonable Rate

Defendant objects that Attorney Gilbert charges "$285 per hour for services 'out of court'

but charges $396 per hour for 'in court hours.'"  ECF No. 184 at 1.  Defendant provides no

explanation for its objection to this rate.  $285 per hour has previously been upheld for litigating

employment claims in this district.  *See Flynn v. Trumbull County, Ohio*, 2007 WL 582323, at *

3 (N.D.Ohio Feb. 20, 2007).  Generally, courts have granted a greater "in-court" rate than an

"out-of-court" rate.  *See e.g. Moore v. Crestwood Local School Dist.*, 804 F.Supp. 960, 965

(N.D.Ohio 1992). Attorney Gilbert, albeit belatedly, filed a "Brief in Support of Attorney Fees

---

[7]  The Fee Bill, as adjusted by the Court, is attached as Appendix A.

15

(5:10cv2300)

w[ith] Attached Affidavits in support of both rates.[8]  ECF No. 185.  Having reviewed the

affidavit, the Court finds the rates charged by Attorney Gilbert to be reasonable.

### b.  Clerical Work

Though Defendant did not object to the portions of the fee bill that encompassed work

clerical in nature, the Court does not compensate an attorney for checking emails from the Court

*via* CM/ECF or from the Ohio Civil Rights Commission.  "[P]urely clerical or secretarial tasks

should not be billed . . . regardless of who performs them."  *Missouri v. Jenkins*, 491 U.S. 274,

288 n.10 (1989).  Accordingly, Attorney Gilbert's hours have been reduced by the amount of

time spent performing clerical tasks.

### c.  Charges for Preparing Fee Bill

Defendant objects to Attorney Gilbert charging $5,286 "for simply preparing the instant

fee bill."  ECF No. 184 at 1.  Defendant offers no explanation for its objection to this charge.

The Court notes the general rule that compensation for hours preparing and litigating attorney

fees should not exceed 3% of the hours in a case that does not go to trial, and 5% of the hours

when the case does go to trial.  *See Bank One, N.A. v. Echo Acceptance Corp.*, 2009 WL 973556,

at * 2 (S.D.Ohio April 10, 2009) (citing *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986).

Because the instant case went to trial, an award of 5% for preparing the fee bill is

appropriate.  However, the Court notes that the correct calculation is 5% of the hours, not the

---

[8]  At the time Defendant filed his objections to the Fee Bill (ECF No. 184), November 1,
2012, Attorney Gilbert had not filed a supporting motion and affidavits in support.  He did so
November 9, 2012.  ECF Nos. 185; 186.  Thus, Defendants objection to the lack of evidentiary
support of the Bill (ECF No. 184 at 2) is moot.

(5:10cv2300)

total fee.  After deducting line by line items, the Court will take 5% of the hours logged by

Attorneys Gilbert and Hilton-Rorer to arrive at the 5% rate.[9]

### d.  Miscellaneous Charges

Defendant objects to a charge of $71.25 for a phone call on June 11, 2011, that Defendant

asserts never occurred.  ECF No. 184 at 1-2.  A review of the Fee Bill shows that there is no

entry listed for June 11, 2011.

Defendant objects to "numerous entries for unspecified 'law clerk work'" that Attorney

Gilbert submits as "costs." ECF Nos. 184 at 2; 183 at 28.[10]  Though some entries are specifically

described as "Researched appropriate Cases for Potential Motions in Limin[]e" (ECF No. 183 at

31), many entries are either clerical in nature (ECF No. 183 at 29, "Print Out Trial Transcripts")

or unspecified (ECF No. 183 at 29, "Research Law"; "Organized").  It does not take knowledge

of the law to scan paper and drive to a courthouse, and the Court will not award  $75/hour law

clerk rates for these tasks.  Accordingly, Attorney Gilbert's award has been reduced by the

amount of time the law clerk spent engaged in clerical or unspecified tasks.

### 2.  The Fee Bill is Excessive

Defendant generally asserts that the entire Fee Bill of $126,446.60 is excessive because of

---

[9]  The Court deducts entries relating to the generation of the Fee Bill and Bill of Costs
before performing this calculation.  It would be inappropriate to allow an attorney to enhance the
fee bill with hours spent generating it, and to then be awarded 5% of that total for preparing it.

[10]  Defendant complains that the costs in Plaintiff's Fee Bill submitted October 29, 2012
(ECF No. 183 at 39) are over three times the amount of costs submitted in Plaintiff's Amended
Bill of Costs filed on August 16, 2012 (ECF No. 177).  The increase is due to law clerk hours
logged as costs in the Fee Bill.  However, as noted above, those costs include time the law clerk
spent engaged in clerical or unspecified tasks.  The Court has reduced the award for that time.

17

(5:10cv2300)

the unreasonableness of the fees, as described above.  Defendant further asserts Attorney Gilbert

spent an excessive amount of time, over 6 hours, researching and reviewing the elements of

retaliation.  ECF No. 184 at 2.  The Court does not find the amount of time spent researching

elements of retaliation--an important issue at trial--clearly excessive and refrains from

speculating as to what a reasonable amount of time spent researching and reviewing would be.

Defendant asserts that Attorney Gilbert charged "$375 for a law clerk's review of the

testimony of Howard Barnes and Mr. Barnes' deposition summary.  However, Mr. Barnes never

testified in the instant case at deposition or trial."  ECF No. 184 at 2.  Plaintiff does not respond

to this allegation.  The Court notes that the law clerk's review of these documents occurred on

August 17, 2012, after trial and after Plaintiff's post-judgment motion and a response to

Defendant's post-judgment motion had been filed.  Because the Court cannot fathom why there

should be reimbursement for the law clerk's review (after trial and post-trial motions had been

filed) of testimony that did not occur in the instant action, the $375.00 charged for such law clerk

work will be deducted from Attorney Gilbert's total award.[11]

---

[11]  The Court notes there was a case pending on the docket of another unit of the instant
Court, *Kendel v. Local 17-A United Food and Commercial Workers et al.*, Case No. 5:09-cv-
1999, in which Howard Barnes testified.  *See* Minutes of Proceedings, January 26, 2011.
    The Court further notes that Plaintiff's Fee Bill charges $1,150.00 for Attorney Hilton-
Rorer's "research and preparation of memorandum Memo for Inclusion and Reply Brief to
Sanctions" on September 15, 2011.  ECF No. 183 at 14.  There were no sanctions pending in the
instant case.  However, in the above cited case, there was a motion for sanctions filed by both
Plaintiff and Defendant pending at that time, and Plaintiff filed a Reply brief on September 21,
2011.  Case No. 5:09-cv-1999 ECF No. 357.  Thus, it appears as though that entry was related to
the other case against Defendants in which Plaintiff did not prevail and is therefore not able to
recover attorney fees.  The Court, accordingly, will not award any fees that are unidentified or not
otherwise in concert with the activity on the docket of the instant case.  *See Disabled Patriots of
America, Inc. v. Reserve Hotel, Ltd.*, 659 F.Supp.2d 877, 885 (N.D.Ohio 2009) (the

18

(5:10cv2300)

The Court acknowledges that Plaintiff filed a Notice of Intent to Use Prior Discovery (ECF No. 52); however, in an abundance of caution, the Court will deduct additional logged activities pertaining to deposition and trial transcripts of Barnes, particularly because such testimony was reviewed during the logging of other entries related to post-trial events and an appeal which were inapplicable to the instant case.  *E.g.* ECF No. 183 at 29 ("Memo to Attorney Gilbert RE: Post Trial"); 30 ("Identify where reversible errors are found using summary"); *see Kendel v. Local 17-A United Food and Commercial Workers et al.*, Case No. 5:09-cv-1999.

Aside from the protestations identified above, Defendant makes no other pointed objection to the Fee Bill.  As noted, the Court has reviewed the Bill and points out that it occasionally includes undocumented or insufficiently documented work, primarily regarding Attorney Hilton-Rorer and the law clerk; and that, as noted, it includes hours arguably spent litigating other cases between the parties.[12]  Accordingly, the Court deletes these insufficient entries.

For the reasons detailed above, the Court reduces the total request of $126,446.60 and awards Plaintiff fees and costs as follows:

_____

documentation offered in support of the hours charged "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.") (quoting *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 553 (6th Cir. 2008) ("counsel need not record in great detail each minute he or she spent on an item, [but] the general subject matter should be identified").

[12]  The Court notes other law clerk entries such as "Prepared Supreme Court Brief"; and "Assisted in Cross Checking 6th Circu[i]t Brief" which are not obviously related to the docket in the instant case.  ECF No. 183 at 29; 33.  Furthermore, after trial and the filing of post-trial motions, the law clerk "Drafted leave to Plead, Reviewed fil[e] in Order to Amend answer and File Motion for Summary Judgment."  ECF No. 183 at 36.

(5:10cv2300)

| | |
|---|---|
| Attorney Fees: | $97,862.50 |
| Costs–Law Clerk: | $3,969.00 |
| Costs–copies, etc: | $4,585.25 |
| 5% of hours: | $4,773.75 |
| **Total:** | **$111,190.50** |

### E.  Motion to Strike Defendant's Reply Brief

On July 3, 2012, the Court issued an Order stating "post-trial motions shall be filed by July 23, 2012.  Replies are due no later than fourteen days after the response has been filed." ECF No. 167 at 1.  Both parties timely filed motions and responses.  ECF Nos. 171; 172; 173; 174.  Defendant timely filed a Reply.  ECF No. 180.  Plaintiff subsequently filed a Motion to Strike Defendant's Reply Brief, stating that Defendant did so "without leave of Court [and] defied the Court's Order by filing an[] additional reply."  ECF No. 181 at 1.

Defendant, in a Motion Contra Plaintiff's Motion to Strike Defendant's Reply Brief, asserted that the Court's Order clearly allowed for reply briefs to be filed after responses were filed to post-trial motions.  ECF No. 182 at 2.  A reading of the Court Order anticipates quite clearly that the Court will entertain post-trial motions, responses, and replies.  Accordingly, Plaintiff's Motion to Strike is denied.  To the extent Plaintiff requests she " be granted leave with additional time in which to file a surreply," this request is also denied as moot, as it misconstrues the Court's Order.

### III.  Conclusion

For the foregoing reasons, the Court:

1.  Denies Plaintiff's Motion for a Judgment as a Matter of Law or, in the alternative, New Trial.  ECF No. 171.

20

(5:10cv2300)

    2.  Denies Defendant's Motion for Judgment as a Matter of law, or, in the alternative,

Motion for Alteration or Amendment of the Judgment .  ECF No. 172.

    3.  Denies Defendant's Motion for Disallowance in part, GRANTS in part.  ECF No. 176.

    4.  Denies Plaintiff's Motion to Strike Defendant's Reply Brief (ECF No. 181);

    5.  Denies as moot Defendant's Motion Contra Plaintiff's Motion to Strike (ECF No.

182).

    6.  Sustains in part Defendant's Objection to Plaintiff's Fee Bill (ECF No. 184) to the

extent that the Court reduces the requested fees and costs and awards to Plaintiff $111,190.50.

    IT IS SO ORDERED.


   January 25, 2013                    /s/ Benita Y. Pearson
Date                                 Benita Y. Pearson
                                      United States District Judge